# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DANAH TAYLOR,<br><br>        Plaintiff,<br><br>v.<br><br>GREEN DOT BANK; EQUIFAX INFORMATION SERVICES, LLC and TRANS UNION LLC,<br><br>        Defendants. | **Case No.:** 2:25-cv-11972<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br>  1. **FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff Danah Taylor, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendants Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("Trans Union") (referenced collectively as "CRA Defendants") and Green Dot Bank ("Green Dot") (Equifax, Trans Union and Green Dot collectively referenced as "Defendants").

## I.   INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the CRA Defendants. Plaintiff contends the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer

1

reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.     Plaintiff's Complaint also alleges that Trans Union also violated 15 U.S.C. § 1681, *et seq.,* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Trans Union's reporting inaccurate information about Plaintiff.

3.     Plaintiff's Complaint also arises from violations of the FCRA, against, Defendant Green Dot for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendant Trans Union.

## II.     <u>JURISDICTION AND VENUE</u>

4.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.     Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.   **PARTIES**

6.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7.      Plaintiff is a natural person who resides in Bloomfield Hills, Michigan.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Green Dot is a financial institution engaged in the business of giving credit and collecting debt. Green Dot is also a "furnisher," as contemplated by 15 U.S.C. § 1681s-2. Upon information and belief, Green Dot is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Green Dot is headquartered at Building 1 1675 N. Freedom Blvd 200 West, Provo, UT, 8460.

10.      Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at at 801 Adlai Stevenson Drive, Springfield, IL 62703.

3

11.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

12.     The CRA Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

13.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

14.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

16.     Defendants failed to maintain procedures reasonably adapted to avoid any such violations.

## IV.   FACTUAL BACKGROUND

17.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20.     The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed

such a vital role in assembling and evaluating consumer credit and other consumer information.

21.     The CRA Defendants, two of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

22.     The CRA Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

23.     The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

24.    The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA Defendants by furnishers, and other information is independently gathered by the CRA Defendants from third party providers, vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

25.    The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

26.    The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

27.    The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

28.    The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

29.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the CRA Defendants) to make lending decisions.

30.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' consumer reports.

31.     The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

32.     FICO Scores are calculated using information contained the CRA Defendants' consumer reports.

33.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

34.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

35.     Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

36.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

37.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

38.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a

9

consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

39.    A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

40.    The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

41.    However, the CRA Defendants also know that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

42.    Further, the CRA Defendants know that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

43.    Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which the CRA Defendants independently obtain consumer bankruptcy case information.

44. The CRA Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

45. Despite the availability of accurate consumer information, the CRA Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

46. The CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the CRA Defendants, already included in its credit files, contained in public records that it regularly accesses, or sourced through its independent and voluntary efforts.

47. The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b).

48. The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in the CRA Defendants' own files.

49. The CRA Defendants also know that that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This

not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

50.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

51.     Thus, the CRA Defendants are on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, the CRA Defendants are on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

52.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about September 18, 2024, in the United States Bankruptcy Court for the Eastern District of Michigan (Case No. 24-48908-tjt).

53.     Plaintiff received an Order of Discharge on or about December 17, 2024.

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

54.   Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

55.   The CRA Defendants each prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

56.   The allegations in this complaint against the CRA Defendants are based on the reporting by the CRA Defendants in Plaintiff's February 19, 2025 consumer disclosures.

57.   The CRA Defendants obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

58.   In the Public Records section of Plaintiff's consumer reports, the CRA Defendants each included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

59.   The CRA Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

60.    The CRA Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

61.    The CRA Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

62.    The CRA Defendants failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

63.    The CRA Defendants inaccurately reported Plaintiff's Green Dot account, ending with ***********2667 and opened in August 2024 (the "Green Dot Account"),, which pre-dated Plaintiff's bankruptcy filing.

64.    The Green Dot Account was discharged on or about December 17, 2024. Therefore, the Green Dot Account should have been reported as discharged in bankruptcy, and with a zero-dollar balance.

65.    However, the CRA Defendants inaccurately reported the discharged Green Dot Account with a status of "Late 60 Days," and with a balance of $1,494.00, instead of a zero-dollar balance.

14

66.     The CRA Defendants did not indicate that the Green Dot Account was discharged in bankruptcy, or report the Green Dot Account with a zero balance, despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer report and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7" and carried zero-dollar balances.

67.     Green Dot furnished information to the CRA Defendants that indicated Plaintiff's debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but the CRA Defendants rejected or otherwise overrode the data it received.

68.     Alternatively, the CRA Defendants knew from past experiences that Green Dot furnished inaccurate information regarding discharged debts, or has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

69.     Nevertheless, the CRA Defendants blindly relied on the information provided by Green Dot even though this information conflicted with or was contradicted by information contained in the CRA Defendants' records, as well as the CRA Defendants' knowledge regarding Plaintiff's bankruptcy and discharge.

70.     The CRA Defendant's reliance on the furnisher, Green Dot, was therefore unreasonable.

71.    The CRA Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe and also reported inaccurate account statuses and/or payment histories.

72.    The CRA Defendants' reporting of the Green Dot Account is patently false/incorrect and therefore inaccurate.

73.    If not patently false/incorrect, the CRA Defendants' reporting of the Green Dot Account is materially misleading and therefore inaccurate.

*Plaintiff's Dispute to Trans Union*

74.    On or about February 09, 2025, Plaintiff submitted a dispute via CreditKarma to Trans Union disputing its inaccurate reporting of the Green Dot Account.

75.    Plaintiff's dispute advised Trans Union that the Green Dot Account was included in Plaintiff's bankruptcy.

76.    On or about February 18, 2025, Trans Union responded to Plaintiff's dispute, but verified its reporting of the Green Dot Account as accurate.

77.    Upon information and belief, Trans Union forwarded Plaintiff's dispute to Green Dot within 5 business days of receipt.

78.    Upon information and belief, Green Dot received Plaintiff's dispute.

79.    Upon information and belief, Green Dot failed to reasonably reinvestigate Plaintiff's dispute.

80.     Upon information and belief, Green Dot either did not reinvestigate Plaintiff's dispute at all, or simply confirmed that what it was already reporting was accurate without reviewing the substance of Plaintiff's dispute.

81.     Trans Union did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded an automated dispute form to Green Dot, despite possessing independent information that indicated the Green Dot Account was discharged.

82.     Although Trans Union could have verified that the Green Dot Account was discharged through the same sources from which it receives consumer bankruptcy information, it neglected to do so.

83.     Rather than perform an investigation based on Plaintiff's dispute based on reasonably available public records and information known by Trans Union merely parroted information furnished by Green Dot that indicated the Green Dot Account was not discharged in bankruptcy.

84.     Trans Union's failure to report the Green Dot Account accurately after receiving Plaintiff's dispute is particularly egregious because the Trans Union knew the information it reported was factually inaccurate and conflicted with information contained in its own records.

*Plaintiff's Damages*

85.     Upon information and belief, had Defendants accurately reported the Green Dot Account with a zero-dollar balance, Plaintiff's credit scores and/or DTI would have been better.

86.     Defendants' reporting of an additional $1,494.00 of debt, which Plaintiff does not actually owe, negatively increases DTI since the debt is substantially greater, but the income is unchanged.

87.     The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

88.     The inaccurate reporting by Defendants suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the Green Dot Account.

89.     After Plaintiff's dispute, in or around April 2025, Plaintiff applied for credit with Sparrow, but was denied due to the inaccurate reporting of the Green Dot Account by Trans Union and Green Dot.

90.     Additionally, after Plaintiff's bankruptcy discharge, in or around May 2025, Plaintiff applied for credit with Citizens Bank, but was denied due to the inaccurate reporting of the Green Dot Account by Equifax and Green Dot.

91.     Defendants' inaccurate reporting of the Green Dot Account, along with additional information belonging to Plaintiff, was published to potential creditors by the CRA Defendants during the process of Plaintiff's credit application.

92.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

93.     As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendants' inaccurate reporting.

94.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

95.     Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## COUNT I
## The CRA Defendants' Violations of the FCRA, 15 U.S.C. § 1681e(b)

96.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

19

97.     The FCRA requires CRAs, like the CRA Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

98.     In this case, the CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

99.     The CRA Defendants independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

100.    When the CRA Defendants procured and published Plaintiff's bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

101.    These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants from which they are on notice of its unreasonable procedures concerning the reporting of discharged debts.

102.    The CRA Defendants knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily

dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

103. The CRA Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

104. Additionally, the CRA Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

105. The CRA Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

106. Yet the CRA Defendants inaccurately reported Plaintiff's Green Dot Account, which pre-dated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and a balance greater than zero.

107. Despite knowledge of these legal obligations, the CRA Defendants willfully and consciously breached their duties under the FCRA. Accordingly, the CRA Defendants deprived Plaintiff of her rights under the FCRA.

108. The CRA Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in Plaintiff's

consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

109.  Individual furnishers of account information also notified the CRA Defendants of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

110.  Yet in this case, the CRA Defendants reported the Green Dot Account, which pre-dated Plaintiff's bankruptcy, with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

111.  The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when the CRAs knew or should have known the information they were reporting is inaccurate, or otherwise contradicted by information known by the CRAS, reported to the CRAs, or reasonably available to the CRA Defendants.

112.  The CRA Defendants' inaccurate reporting was particularly egregious because they have the ability to independently confirm that the Green Dot Account was discharged by reviewing their own records or accessing readily available public records.

113.   The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

114.   Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

115.   The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

116.   Plaintiff suffers actual damages, including the above-refrenced economic damages, a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

117.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

118.   The CRA Defendants are each a direct and proximate cause of Plaintiff's damages.

119.   The CRA Defendants are each a substantial factor in Plaintiff's damages.

120. Therefore, the CRA Defendants are each individually liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
**Trans Union's Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681(i)**

121. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein.

122. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

123. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

124. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

24

125.   Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Trans Union also violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Green Dot Account even after Plaintiff notified it of the inaccurate information in Plaintiff's credit file.

126.   Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

(a)    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)    Failing to consider all relevant information while investigating Plaintiff's dispute.

(c)    Failing to include all relevant information when notifying Green Dot of Plaintiff's dispute.

127.   Instead of reasonably reinvestigating Plaintiff's dispute, Trans Union continued to report the discharged Green Dot Account with an outstanding balance after Plaintiff's bankruptcy discharge.

128.   Trans Union possessed information provided by Plaintiff that directly contradicted Green Dot's reporting of Plaintiff's accounts.

129.   Yet despite knowledge of the information's unreliability, Trans Union made no independent effort to verify its accuracy.

130.   Trans   Union's   inaccurate   reporting   damaged   Plaintiff's creditworthiness.

131.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Trans Union inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

132.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

133.   Trans Union is a direct and proximate cause of Plaintiff's damages.

134.   Trans Union is a substantial factor in Plaintiff's damages.

135.   Trans Union's acts, as described above, were done willfully and knowingly; or, alternatively were committed negligently.

136.   Therefore, Trans Union is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et. seq*.

## COUNT III
### Green Dot's Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

137.   Plaintiff   incorporates by   reference all the   above   paragraphs   of this Complaint as though fully stated herein.

26

138.    The FCRA requires furnishers of information like Green Dot to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

139.    Green Dot knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law. Green Dot obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Green Dot acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

140.    Plaintiff disputed the Green Dot tradeline through Trans Union.

141.    Upon information and belief, Trans Union forwarded Plaintiff's dispute to Green Dot, notifying Green Dot that Plaintiff was disputing the information it had furnished about the Green Dot Account.

142.    Upon information and belief, Green Dot received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

143. The inaccurate Green Dot Account materially and adversely affects Plaintiff's credit standing.

144. On at least one occasion within the past two years, by example only and without limitations, Defendant Green Dot violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Trans Union.

145. Green Dot violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)    Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b)    Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c)    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)    Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)     Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

146.   Green Dot unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

147.   Green Dot is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

148.   Consequently, Green Dot is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## V.     <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)     Declaratory judgment that the CRA Defendants violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

(b)     Declaratory judgment Green Dot violated the FCRA, 15 U.S.C. § 1681s-2(b);

(c)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(f)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(g)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VI.     <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 30th day of June, 2025

By:*/s/Landon T.Maxwell*
    Landon T. Maxwell, AZ #038439
    CONSUMER JUSTICE LAW FIRM PLC
    8095 N. 85th Way
    Scottsdale, AZ 85258
    T: (480) 626-1975
    F:  (480) 613-7733
    E: lmaxwell@consumerjustice.com